IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 19-mj-01077-KBM |
| ) | |
| DANIEL ARCHULETA, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' MOTION TO RECONSIDER
ORDER OF RELEASE AND MOTION TO STAY RELEASE**

Pursuant to this Court's authority referenced in 18 U.S.C. § 3141(a), the United States hereby moves this Court to reconsider its release order, which was announced in open Court on Friday, April 26, 2019, releasing Defendant Daniel Archuleta to the third-party custody of his sister. *See* Doc.8. The United States also requests the Court continue its stay of Defendant's release pending decision by the Court. The United States presents the following evidence, including newly obtained evidence, and argument in support of its motion to reconsider.

I.   *Background*

Earlier this month, Archuleta delivered over a pound of methamphetamine to an undercover agent ("UC") in a public place in Albuquerque, NM. In exchange, the UC paid Defendant $3,500 for the methamphetamine. Archuleta coordinated the drug deal over the phone, and the actual exchange was observed and recorded by federal agents. Agents later field-tested the methamphetamine, which tested positive for methamphetamine and weighed approximately 606.1 gross grams. Prior to that drug deal, agents documented at least two other

1

drug deals with Archuleta. One of which was for a half pound of methamphetamine in early March.

Based on those buys, surveillance of Archuleta, and other investigative techniques, agents obtained a search warrant for Archuleta's house at 518 Phoenix Ave. NW, Albuquerque, NM 87107. There, agents located on April 24, 2019, the following firearms in Archuleta's bedroom: one .22 caliber rifle with two loaded magazines nearby; one .223 caliber pistol with a loaded magazine nearby; one 1911 variant pistol with a round loaded in the chamber; one .25 caliber pistol with a round loaded in the chamber. Among other items, agents also located scales likely used to weigh illegal drugs. Agents also recovered two of Archuleta's phones. Finally, agents also discovered on April 24, 2019, a late model shotgun and ammunition in a storage unit (#G9) that Archuleta rented at CubeSmart Self Storage located at 7440 Central Avenue SE, Albuquerque, New Mexico.

On August 24, 2019, Archuleta was arrested after a traffic stop. Archuleta was found with a digital scale, as well as a torn piece of aluminum foil consistent with personal use of heroin. On April 25, 2019, a Criminal Complaint (Doc. 1) was filed pursuant to U.S. Magistrate Judge Karen B. Molzen's finding that probable cause existed to believe Defendant violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 922(g)(3) for his conduct in early April 2019 and for the searches conducted on August 24, 2018.

On April 25, 2019, following a detention hearing, U.S. Magistrate Judge Jerry H. Ritter ordered Archuleta released to the custody of his sister, who lives with her four-year-old son in Albuquerque, NM. Judge Ritter noted, in support of his order, Archuleta's lack of criminal convictions, the willingness of his sister to take third-party custody of him, and the availability of

treatment options for his addictions. He also adopted the pre-trial report that recommended Archuleta's release to his sister. At the United States' request, however, Judge Ritter stayed his order releasing Archuleta and allowed the United States until close of business on April 29, 2019, to file an appeal.

After the hearing, agents conducted a preliminary search of Archuleta's phones. That search revealed hundreds of text messages regarding the sale of illegal drugs, firearms, and body armor. Furthermore, the content in Archuleta's phone corroborated the United States' concerns about Archuleta's propensity for domestic violence. And finally, the conversations in the phone, as well as posts located on social media, cause the United States concern for the wellbeing of a confidential source used in this case. The United States also details Archuleta's history of domestic violence in further detail. Given these new facts, the United States respectfully requests this Court reconsider its order releasing Archuleta, and instead order him detained pending trial.

## II.     ARGUMENT

### *A Rebuttable Presumption of Detention Exists*

The starting point for the Court's analysis is the rebuttable presumption that exists in certain controlled substance offenses. When, as here, a defendant is charged with an offense for which the authorized maximum term of imprisonment is ten years or more under the Controlled Substances Act, 21 U.S.C. § 801 et seq., a statutory rebuttable presumption arises that no conditions of release will guarantee a defendant's appearance and assure the safety of the community. 18 U.S.C. § 3142(e). This presumption "reflects Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries, as well as strong incentives to continue in the drug trade." *United States v. Moreno*, 1994 WL 390091 (1st

Cir. July 14, 1994) (unpublished).

Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk of flight and danger to the community always remains with the United States. *United States v. Stricklin*, 932 F.2d 1353, 1354 (10th Cir. 1991). The defendant's burden of production is not heavy, but some evidence must be produced. *United States v. Cook*, 880 F.2d 1158 (10th Cir. 1989). Even if a defendant manages to meet his burden of production, the presumption does not evaporate; to the contrary, it remains a factor for consideration by the district court in determining whether to release or detain. *Stricklin*, 932 F.2d at 1354-55. Similarly, it should remain a factor when this Court considers whether to fashion conditions of release or relax such conditions further.

The presumption established by § 3142(e) is triggered by the Criminal Complaint filed against Defendant, which charges A-level distribution of methamphetamine based on the more than 500 grams of a mixture and substance of methamphetamine Defendant delivered to the UC.

Archuleta has offered insufficient facts to rebut the presumption that no condition or combination of conditions exist that would reasonably assure his future appearance in court as required or the safety of the community. Archuleta produced no evidence at the detention hearing. Instead, his attorney simply argued the findings made in the pre-sentence report, which reflected his lack of criminal convictions, that his sister was willing to assume third-party custody, and that treatment options for his addictions were available upon release. The United States, however, relies on the following facts to support the conclusion that Archuleta presents both a flight risk and danger to the community that is not sufficiently mitigated by his release to his sister.

*18 U.S.C. § 3142(g) Factors*

In assessing which conditions will reasonably assure the defendant's appearance and the safety of the community, the Court must consider the factors expressly set out in 18 U.S.C. § 3142(g). These factors include (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (a) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (b) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g). An objective application of these factors counsels against releasing Archuleta prior to trial.

*Nature and Circumstances of the Offense*

In the instant case, Archuleta has been charged with A-level distribution of methamphetamine. As this Court well knows, methamphetamine has been a scourge on the community of New Mexico, resulting in multi-generational addiction, related property crime, violence, and overdose. In early April, Archuleta sold over a pound of methamphetamine to the UC; the evidence on his phone and the investigation as a whole demonstrate Archuleta has been selling illegal drugs on the street for some time. The Court can infer the negative impact of such a large quantity of methamphetamine.

Additionally, if after further investigation it is determined that the four firearms seized from Archuleta's home and storage unit, one of which was reported stolen, were used in furtherance of the drug trafficking crime, he could face an additional five years imprisonment if charged and convicted of a violation of 18 U.S.C. § 924(c)(1)(A). There is nothing about the nature and circumstances of the offense that tilt in favor of Archuleta's release. Instead, the evidence shows that he is a regular and large-scale distributor of methamphetamine who possesses and traffics firearms. The Tenth Circuit has recognized that "[t]he Guidelines provide a sentence enhancement for weapon possession to reflect the 'increased danger of violence when drug traffickers possess weapons.'" *United States v. Morales*, 232 F. App'x 800, 803 (10th Cir. 2007) (citing U.S.S.G. § 2D1.1 cmt. n. 3.). Illegal drug trafficking and firearms are a highly dangerous, often lethal, mix. Archuleta's repeated mixture of the two weighs against him.

*Weight of the Evidence*

With respect to the second factor, *id.* § 3142(g)(1), the evidence against Archuleta weighs heavily. In fact, Archuleta filed a waiver of preliminary hearing, a tacit admission that the Court's finding of probable cause is irrefutable. Archuleta was recorded discussing a drug delivery with the UC. He was observed by law enforcement driving to the delivery point. He delivered approximately 1.25 pounds of methamphetamine to the UC. The methamphetamine field-tested positive and will be tested by DEA chemists. Archuleta was arrested with drug paraphernalia, his house contained additional evidence of drug trafficking, and he maintained four firearms, one of which was reported stolen. Archuleta confessed in a post-arrest interview to trafficking illegal drugs, using illegal drugs, and possessing the firearms at his residence and storage unit. Archuleta's phone revealed evidence of another loaded pistol, along with additional

quantities of methamphetamine, heroin, pills and marijuana, and a scale likely used to weigh and package drugs.

*History and Characteristics of the Defendant*

With respect to the third factor, *id.* § 3142(g)(3), Archuleta's history and characteristics do not weigh in his favor. At the time of his arrest, he was officially unemployed. Unofficially, he was a prolific drug trafficker. He is an admitted addict, currently withdrawing from heroin and methamphetamine. While Archuleta does appear to have strong ties to the community, many of those ties appear to be to people involved in drug and firearms trafficking. Consider the following conversations as an example of the many relevant conversations discovered on Archuleta's phone.

*Bulk Drug Dealer*

Archuleta sent several messages to his source of supply, Yessica Gutierrez, on April 9 and 10, 2019, in regards to large drug sales. Archuleta wrote, "Pull in the drive way and park tonthe right Turn of your lights".[1] Later, Archuleta texted, "Hey I need to meet u I have 5 sold right now $10,500". Agents familiar with the investigation believe Archuleta was indicating he arranged for the sale of 5 pounds of methamphetamine for $10,500, or $2,100 per pound. The large quantity and low price of the methamphetamine is indicative of Archuleta's relatively higher level in the hierarchy of drug trafficking. Furthermore, agents now have results back from methamphetamine purchased from Archuleta in approximately January of 2019. The testing revealed 98% pure methamphetamine, which is yet another indicator of Archuleta's relatively

---

[1] Archuleta's text messages are quoted verbatim, along with shorthand, spelling and grammar mistakes. The United States makes no attempt to correct the text, but simply to explain its meaning.

high level in the drug business.

### *Street Drug and Firearms Dealer*

In a conversation with a person Archuleta calls, "Ashlie GreenEyez," GreenEyez asks Archuleta on April 14, 2019, "Can I get a ball"? Agents familiar with the investigation understand the term "ball" in the context of the full conversation to mean 3.5 grams of methamphetamine ("clear"). Archuleta responds, "Ok where you at". On April 21, 2019, GreenEyez tells Archuleta, "Hey I need s ball can I meet up with you please". Archuleta responds, "f i just have dark". Agents understand this last exchange to mean that GreenEyez wants to buy methamphetamine from Archuleta, but he only has heroin at the time.

In a conversation with a person Archuleta calls, "Natara Rose," Archuleta asks on April 9, 2019, "W hats up thougt u wanted this gun back"? Rose responds on April16, 2019, "Hey o need to grt my strap from you I got the cash n everything". Agents familiar with the investigation interpret this conversation to mean Archuleta was holding a firearm for Rose in exchange for illegal drugs, and was planning to return it once the illegal drugs were paid for by cash. On April 19, 2019, Archuleta tells Rose, "Whats the deal im bout to sale this to someone else tomarrow afternoon if u dnt come for it by then its been almost 2 weeks already I cant hold it any longer". Agents believe Archuleta was telling Rose he would sell his gun if Rose did not bring the illegal drug payment soon.

On April 19, 2019, GreenEyez tells Archuleta, "Hey my homie has a toy for sale" and sends Archuleta a picture of a handgun. In another conversation on February 14, 2019, with a person Archuleta calls, "Vanessa Salazar," Salazar asks Archuleta, "Do you know any one interested in a bullet proof vest?" Archuleta responds, "Im tyna sale mine lol," indicating that he

is also trying to sell a bullet proof vest and does not need to buy another.

In a conversation with a person Archuleta calls, "Miles Adler," Adler asks Archuleta on April 8, 2019, "Do u have another b ball"? Adler then forwards two pictures of assault rifles to Archuleta. Agents familiar with the investigation understand Adler is requesting if Archuleta can provide illegal drugs in exchange for firearms. Archuleta responds that Adler can come to his house, indicating he is interested in completing the sale.

In a conversation in March of 2019 with a person Archuleta calls, "Taisha Claudio," Claudio continually requests methamphetamine in exchange for food stamps. Claudio says she is "a lil fucked," which agents believe to mean she is going through withdrawal and needs methamphetamine. Other clearly addicted customers offer to exchange stolen goods, steal particular items, and give fraudulent gift cards to Archuleta in exchange for methamphetamine. Archuleta appears to be open to such exchanges. Similar conversations in which various people request street level drug quantities from Archuleta from the Fall of 2018 until his arrest in late April of 2019.

***The Nature and Seriousness of Danger to Any Person or the Community Posed by Defendant's Release***

The messages on Archuleta's phone confirm the United States' fear about his release. Archuleta primarily earns his living trafficking illegal drugs. He traffics illegal drugs to scores of users and addicts around Albuquerque. He conducts drug trafficking activity even when he is with his children. For example, in one exchange on April 10, 2019 with his source of supply, Yessica Gutierrez, Archuleta tells Gutierrez "this dudes here already can u gtab them n meet me a t the dollar tree by my pad on 4th n i40 as soon as possible with this sale ima pay u back everything I owe and buy one for myself". Gutierrez tells Archuleta, "Yo get me Im trying to roll

9

out tonight", and later, "I'm just waiting on you I just got my car back a while ago". Archuleta tells Gutierrez, "Im at cool spring on san mateo n mcloud with my kids can u come here". Gutierrez confirms, "I'll hed up that way now in 10". Agents familiar with the investigation believe this exchange was in regards to a two-pound sale of methamphetamine Archuleta arranged. Gutierrez indicates that she needs to go and pick up from her source, but needs money from Archuleta before she can leave. Archuleta arranges for Gutierrez to come pick up drug proceeds while he is at Cool Springz, a local trampoline park, with his minor children. Archuleta's conduct put our community at risk, as well as his own minor children. If released, he will pose the same risk to his 4-year-old nephew with whom pre-trial services proposes he live.

More concerning is Archuleta's penchant for domestic violence. Just last year, on May 27, 2018, Albuquerque Police Department (APD) responded to a domestic violence call. Archuleta's victim that day was his girlfriend, Alexis Rodriguez. Responding APD Officer Randall Kimminau reported that Ms. Rodriguez reported pain from her left ear, a bloody lip, and dizziness. Ms. Rodriguez told the officer that she was in a domestic argument with Archuleta inside his vehicle. Ms. Rodriguez reported that Daniel started hitting her face while he was driving, first with an open hand then with his fist. She could not recall the number of times he struck her. At one point, Archuleta told Ms. Rodriguez to get out of his car. When she refused, Archuleta pulled out a gun he kept on the side of his door, inserted a magazine into the gun, and pointed it at Ms. Rodriguez. Ms. Rodriguez exited the vehicle at gunpoint and then called police after Archuleta drove off. Archuleta was charged in Bernalillo Court Metropolitan Court, but the case was dismissed late last year because Ms. Rodriguez failed to present at court proceedings. *See State v. Archuleta*, T-4-FR-2018-003903.

Archuleta's current domestic violence charge follows two previous violence charges. In 2008, Archuleta was convicted of Battery and placed on probation in the Bernalillo County Metropolitan Court. *See State v. Archuleta*, T-4-DV-2008-001838. Archuleta was also charged in 2005 with Battery Against a Household Member. As with his 2018 charge, the case was dismissed because the prosecution was unable to proceed when the witnesses failed to participate in witness interviews. *See State v. Archuleta*, T-4-DV-2005-002436.

Archuleta's past charges involving violence are corroborated by the preliminary examination of his phone. In a conversation with a person who appears to by the mother of Archuleta's children (J.F.), J.F. tells Archuleta, "you have done way worse this entire year. From the harassing calls to cheating to doing drugs and physically abusing me. You are a monster and you know it." Archuleta does not refute those claims, but simply says, "Not here to talk about that just my boys." Archuleta's conduct toward J.F. is itself corroborated by APD records. On August 5, 2017, J.F. called APD to report her ex-husband Archuleta took their children and would not return them. J.F. was able, however, to get the children back from Archuleta's sister. According to J.F., when she finally had the kids in her vehicle, Archuleta who was purportedly angry with J.F. over finances, placed his vehicle behind hers so she could not leave. J.F. reported that the children began screaming and were very frightened. J.F. was able to maneuver out of the spot and get to safety. No criminal charges were filed.

Archuleta directs his anger and threats at others as well. In a message to a person Archuleta calls, "Joe Brawley," Archuleta threatens in February of 2019 to exact violence on Brawley for apparently selling one of Archuleta's firearms without his permission.

> Dnt u think u shoulda sold it to someone who I didn't knw you idiot I cant belive you you're a sorry mother fucker you knw that as much as I help your bitch

11

> ass out you wanna pull some hoe shit like that dnt let me catch you out joe cause im gonna beat your ass I promise you that . . . . u go n pull some shit like that that shit has you real fucked up bad and it earned you an ass kicking idk wtf you whete thinking I really dnt now ima have to knock some sense into your stupid ass

Later, Archuleta explains, "That gun was my plugs he was buying it back from me . . . ," indicating that Archuleta took the firearms as collateral for a drug deal. Archuleta later tells Brawley, "your asking for an ass kicking Joe keep my name outta your mouth."

Finally, the United States is concerned about the safety of a confidential source used in the course of this investigation. Since Archuleta's arrest on April 24, 2019, Archuleta's girlfriend, Alexis Rodriguez, posted an alarming message on her Facebook page. On April 27, 2019, Ms. Rodriguez posted a picture of herself and Archuleta along with a caption, "Fuck a hater, fuck a snitch.. You get what you give & karmas a BITCH." The caption also contains several emoji's including a demon face, a fist, and a gun. Agents familiar with the investigation believe that through information provided by Archuleta, Ms. Rodriguez has placed blame for Archuleta's arrest on a confidential informant who she refers to as "a snitch." Given Archuleta's record of domestic violence, his threats to those who he perceives to have wronged him, his ready ability to acquire firearms, and the potential identification of a confidential informant, the United States is concerned for the safety of the confidential informant in this case.

### III. CONCLUSION

The presumption invoked by the United States in this case reflects Congress's findings that drug traffickers often have the resources and contacts to flee from justice, as well as strong incentives to continue in the drug trade. *United States v. Moreno*, 30 F.3d 127 (1st Cir. 1994) (unpublished). Additionally, analysis of Archuleta's phone demonstrates that he may have

significant drug debts to sources of supply. Archuleta's only source of income prior to his arrest appears to have been from trafficking illegal drugs and guns. Archuleta's livelihood was drug trafficking, and lawful employment is unlikely to quickly pay for his drug addiction or his drug debts. Accordingly, Archuleta is likely to resume his criminal activity and thereby presents a poor candidate for release to a third party and should instead remain in custody.

Finally, Archuleta's release to his sister is particularly concerning. His sister, as earnest as she may be, lives with her 4-year-old child. How can the Court ensure the safety of that child by introducing Archuleta to his household? Archuleta has already proved himself to engage in domestic violence, involve his own children in drug trafficking, and surround himself with firearms, drugs, and people who do the same.

WHEREFORE, for the foregoing reasons, and any additional reasons that may be presented at an evidentiary hearing this Court may order on this matter, the United States requests that the Court reconsider its release order in this case and order defendant detained pending trial. The United States further requests that the court stay entry of United States Magistrate Judge Ritter's release order pending the resolution of this motion and, if necessary, schedule a hearing on this motion during which the parties may present additional evidence and argument to the Court.

    Respectfully submitted,

    JOHN C. ANDERSON
    United States Attorney
    /s/
    KRISTOPHER N. HOUGHTON
    Assistant U.S. Attorneys
    P.O. Box 607
    Albuquerque, New Mexico   87103
    (505) 346-7274

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of April, 2019, I filed the foregoing pleading electronically through the CM/ECF system, which is designed to cause counsel of record for the defendant to be served by electronic means.

                                       /s/
                                       KRISTOPHER N. HOUGHTON
                                       Assistant U.S. Attorney